UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
FRANTZY JULES,

Plaintiff,                                                                              Civ. No: 21-4035

        - against-

                                                                          COMPLAINT

OTG MANAGEMENT, LLC and JULIO DELGADO,

Defendants.
-------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. Plaintiff Frantzy Jules ("Jules") brings this case against his former employers, Defendants OTG Management, LLC ("OTG") and Julio Delgado ("Delgado"), to remedy injuries he sustained as a direct result of sexual harassment, race/national origin discrimination, and retaliation. Plaintiff was subjected to merciless sexual harassment by his supervisor Delgado, eventually causing Plaintiff to make a formal complaint to the OTG human resources department after Delgado sexually assaulted him at work in April 2019. The hostile work environment Plaintiff was forced to endure involved race and national origin discrimination in addition to sexual harassment. Delgado likened Plaintiff, who identifies as Black-Haitian, to animals such as monkeys and donkeys, and often made disparaging comments about the financial plight of Plaintiff's immigrant family as well as the Haitian populace in general.

2. Despite Plaintiff's complaint about Delgado's conduct, OTG failed to discipline Delgado in any form. Rather, Delgado began a course of retaliation against Plaintiff, including demanding that Plaintiff complete a high-risk electrical repair well outside of his job duties and qualifications. Faced with an employer unwilling to protect him, Plaintiff sought a transfer to another OTG location in order to escape Delgado's harassment. The day

1

after learning of Plaintiff's transfer request, Delgado again retaliated against Plaintiff by recommending that OTG management terminate Plaintiff's employment. Plaintiff was eventually terminated in June 2019 after he submitted a statement detailing Delgado's harassment.

3. Defendants' actions created and maintained a hostile work environment and denied Plaintiff his legal right to a workplace free of harassment and discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., ("Title VII") and the New York City Human Rights Law, New York City Admin. Code §§ 8-107(1), (7) ("NYCHRL").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims under Title VII pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the NYCHRL claims pursuant to 28 U.S.C. § 1367.

5. Plaintiff filed a charge of unlawful discriminatory practice relating to employment because of race, sex, and opposed discrimination/retaliation in violation of Title VII against Defendants OTG and Delgado with the U.S. Equal Employment Opportunity Commission, New York District Office ("EEOC") on or about March 12, 2020.

6. After completing its investigation, the EEOC issued a Notice of Right to Sue dated April 20, 2021, without making a determination as to whether "further investigation would establish violations of the statute." *See* April 20, 2021 Notice of Right to Sue ("NRTS"), attached as Exhibit A.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(l).

## PARTIES

8. Jules is a 44-year-old male who currently resides in Brooklyn, New York with his wife and children. Jules was born in Haiti and immigrated to the United States in 1999. Jules identifies as Black-Haitian.

9. OTG is a domestic business corporation that owns and operates restaurants in ten major U.S. airports, including LaGuardia Airport in Queens, New York. OTG specializes in airport hospitality. OTG provides information services, designs airport terminals and offers food and beverages to airport guests. Upon information and belief, OTG employs over 1,000 employees across the U.S.

10. Delgado is a Latino male who worked for OTG as a Facilities Maintenance Manager. Delgado was Jules' direct supervisor throughout the course of Jules' employment with OTG. Delgado was empowered by OTG to hire, fire and discipline staff, including Jules, under his supervision. Upon information and belief, Delgado also worked as a chef at the New York LaGuardia Airport Marriott on Ditmars Boulevard in Queens, New York while he supervised Jules at OTG.

## STATEMENT OF FACTS

11. Jules was hired by OTG as a full-time Equipment Technician at the LaGuardia Airport location in June 2018. Jules began his mandated three-month probationary term at OTG on July 11, 2018. Jules was assigned to work under the supervision of Delgado, who was then a Facilities Maintenance Manager at OTG. Jules was paid $15.00 an hour.

12. Jules was a member of the Unite Here Local 100 Union through his employment with OTG.

13. In approximately August 2018, Delgado began sexually harassing Jules at work. Delgado seized numerous opportunities to physically touch Jules when the two men encountered one another in the workplace. For example, Delgado would grab Jules' hand or arm without Jules' consent in several instances when the two men were in proximity at work. At one point, Jules asked Delgado to refrain from the unwanted touching. Delgado reacted by clutching his own genital region over his pants and sticking his tongue out towards Jules in a taunting manner.

14. Despite Jules' pleas to Delgado to stop touching him, Delgado only intensified his unlawful behavior. As the two continued working together, Delgado began holding Jules' hand when they spoke at work. When Jules tried to remove his hand from Delgado's grip, Delgado responded by squeezing Jules' hand even harder. Jules was especially troubled by Delgado's physical restraint since he often observed Delgado rubbing his own genitals with his free hand while he gripped Jules' hand with his other.

15. Jules' pleas to Delgado to stop the unwanted touching were consistently met with laughter from Delgado.

16. Delgado often sent Jules messages where he attempted to flirt with Jules. For example, Delgado sent a message saying, "sorry I pressed your name by mistake lol…you see that's how much you are on my mind. Sorry about that."

17. Delgado sought to prevent Jules from informing OTG management about his unlawful conduct by willfully misleading Jules about the length of the new employee probationary period. Delgado told Jules that Jules could not make a complaint about his behavior since Jules had not yet completed his probationary period. However, Delgado made this statement two or three months after Jules had completed the three-month probationary

period. Jules was not made aware that his probationary period was only three months until approximately April 2019.

18. Delgado often leveraged Jules' financial state against him in an effort to prevent Jules from making a complaint about his conduct. For example, Delgado would remind Jules that he could not afford to lose his job at OTG since his family in Haiti was dependent on Jules' income.

19. Delgado also subjected Jules to race and national origin discrimination. Delgado often made disparaging remarks about Jules' "poor Haitian family" as well as the financial state of the Haitian populace in general. Delgado would also say "what what? I can't understand you, learn to speak English," while speaking to Jules in the terminal. Delgado also described Jules as a monkey and donkey in text messages with their maintenance team. Delgado even sent a photo of a monkey to the team's group chat to describe Jules.

20. Delgado and other management employees often referred to Jules as "Frenchie" rather than his given name. When Jules asked Delgado why he and the other managers called him Frenchie, Delgado stated that he knows a woman who goes by Frenchie and Jules walks the same way as she does.

21. During one shift in April 2019, Jules was scheduled to work from 3 pm to 11 pm. At approximately 8 pm that evening, Delgado sent a text message to Jules asking Jules to paint the OTG management office area in Terminal C of LaGuardia Airport. Specifically, Delgado wanted Jules to paint the walls, doors, and kitchen area. Delgado told Jules he wanted the job done in preparation for a visit by an OTG district manager who was scheduled to visit the LaGuardia site the following week.

22. Jules told Delgado that it would be difficult to paint those areas at that time since they were very busy after the dinner rush. The office space Jules was asked to paint houses Delta Airlines offices and all OTG restaurant managers' offices. Thus, it experiences heavy traffic during the evening business hours. Due to the foot traffic from airport staff and guests, Jules knew his work would be disrupted as others used the facilities he was working on.

23. After Jules explained his concern to Delgado via text message, Delgado called Jules on the phone and screamed, "I don't care, do what I tell you to do." Jules then texted Delgado and told him that he was concerned he would be working well past his shift end time of 11 pm if he painted all the areas Delgado had requested. Jules had already worked well over 40 hours that week. Due to Delgado's pattern of sexual harassment, Jules suspected Delgado was intentionally trying to keep him at work late so there would be fewer people around in the event Delgado tried to sexually harass him again.

24. Although he was concerned for his safety, Jules could not defy Delgado's orders out of fear of losing his job. Jules started painting the management offices that evening as Delgado had directed. As Jules was painting, his phone started ringing. Jules noticed it was Delgado calling him via FaceTime. When Jules answered the video call, he immediately noticed Delgado was calling from his second job at the Marriott Hotel near LaGuardia because Delgado was in a white hat and apron, which he wore in the kitchen at the Marriott.

25. Delgado asked Jules if he was doing the paint job. Jules confirmed that he was. Jules became annoyed with Delgado during the conversation as Delgado was not being serious on the phone. Delgado repeatedly stuck his tongue out while the two continued their video call. Delgado also asked Jules for his exact location. Jules again confirmed that he was painting in Terminal C and showed Delgado his surroundings during the video call.

6

26. Jules then asked Delgado to stop harassing him but Delgado continued. Seeing an opportunity to catch Delgado in the act, Jules captured a screen shot of Delgado sticking his tongue out during the conversation. This screenshot was saved on Jules' work phone that he later turned over to OTG HR Manager Noelle Voska ("Voska"). Within a matter of minutes after ending the call, Delgado made several attempts to FaceTime Jules again. However, Jules ignored the calls since he suspected Delgado was trying to use the opportunity to continue harassing him over the phone.

27. Jules was still painting in Terminal C by 1 am the following morning, two hours past his 11 pm clock-out time. Delgado texted Jules asking why Jules was not answering his calls. Jules texted Delgado stating he was working and didn't have time to watch Delgado stick his tongue out at him.

28. At approximately 2 am, Delgado arrived at the OTG management offices at LaGuardia where Jules was working. There was no one else in the OTG management offices besides Jules and Delgado. As the two stood facing each other, Delgado stated, "oh you have paint on your face." Delgado then tried to wipe the paint off Jules' face with one of his hands while he slid his other hand under Jules' shirt and grabbed Jules' chest. Jules immediately screamed "what the hell are you doing?" Delgado ran into a management office and quickly closed the door behind him. Jules screamed and cried at the door and repeatedly asked Delgado "why are you doing this to me?" Jules also asked, "why am I the only one you do this to?" Delgado refused to open the door, but he said, "don't worry, you're going to get paid overtime." Delgado also said, "you are going to have more money to send back home to Haiti." Delgado never came out from behind the door.

29. From behind the door, Delgado instructed Jules go home and said that someone would finish the paint job for him. Delgado also told Jules he should be back at work at 8 am that same morning and would be paid double.

30. Jules was very shaken from the sexual assault. He could not stop thinking about what Delgado had done. Jules remained in tears for the rest of the morning following the assault. Jules had nightmares the night of the assault about Delgado attacking and jumping on top of him. Jules spoke to his wife, friends and an OTG colleague about the sexual assault.

31. Jules returned to work later that morning and made a verbal complaint about Delgado's conduct to OTG Director Justin Evans ("Evans"). Evans asked Jules not to resign his position. Evans then informed Jules that he could not take any action against Delgado since he was not Delgado's supervisor. Evans instructed Jules to speak with OTG HR Manager Noelle Voska.

32. Two or three days following the assault, Jules went in search of Voska at the OTG management offices so he could make a formal complaint against Delgado. Jules was not able to find Voska so he opted to speak with OTG HR Generalist Rana Seabrook ("Seabrook").

33. When Jules walked into Seabrook's office, Seabrook asked, "Jules what happened? Talk to me." Jules then asked Seabrook if the two could speak in private to which Seabrook responded, "I got you, talk to me." Jules sat down in Seabrook's office and told her about how just two or three days prior, Delgado had sexually assaulted him in Terminal C after forcing him to remain at work until 2 am.

34. Seabrook told Jules she would speak to Delgado. The following day, Seabrook gently tapped Jules on the back in the OTG office area and informed him that she had talked to Delgado about his complaint. Seabrook also elevated the complaint to OTG HR managers.

35. Seabrook then called Delgado on speaker phone while Jules stood by. During the call, Delgado stated that he would refrain from touching Jules. Seabrook reiterated that Jules was very uncomfortable with Delgado's touching. Delgado then stated, "That's not going to happen anymore."

36. Two days following the complaint to Seabrook, Jules observed a stark change in Delgado's demeanor at work. Delgado was visibly upset and sounded agitated during his conversations with Jules. Delgado became even more abusive towards Jules following the sexual harassment complaint to Seabrook. For example, Delgado retaliated against Jules by assigning him hazardous tasks. On one occasion, Delgado ordered Jules to complete a high voltage wire repair in one of the airport terminals. Prior to this unusual request, neither Delgado nor OTG had provided Jules with the necessary electrical training needed to repair the wiring. Upon information and belief, this type of electrical work was normally outsourced by OTG to third party electricians. When Jules expressed his safety concerns to Delgado, Delgado responded by threatening to terminate Jules if he refused to complete the wire repair. Jules reported this incident to Seabrook who instructed Jules not to complete the task. Seabrook informed Jules she would speak to Delgado about the incident.

37. Delgado further retaliated against Jules by recommending that OTG terminate Jules' employment following Jules' request to transfer to OTG's JFK Airport location.

38. Unable to endure Delgado's constant harassment, Jules requested a transfer to JFK on June 13, 2019. Jules emailed OTG National Director of Facilities Management &

9

Administration, Deanne Lesnik ("Lesnik") asking for transfer approval. In the June 13 correspondence, Jules stated the reason for requesting the transfer as an illness in his family. Jules felt he could not tell Lesnik the reason behind his request was to escape Delgado because he feared Delgado would retaliate further if Lesnik questioned him about Jules' allegations.

39. Delgado had threatened Jules on a prior occasion after Delgado discovered that Jules was speaking to OTG manager John Lastorino ("Lastorino") about transferring to Lastorino's JFK-based team during one of Jules' shifts at the JFK site.

40. When Delgado confronted Jules about his conversations with Lastorino, Jules informed Delgado he intended to transfer to Lastorino's team once he was able to receive approval from HR. Delgado responded by telling Jules that Jules could either remain at LaGuardia or be terminated. Delgado also stated Jules could transfer "over [his] dead body."

41. Jules' fears came to fruition when Lesnik responded to his June 13 email and cc'd Delgado as a recipient. Lesnik stated that she was aware of his request to transfer and "the necessary steps to make this happen are already underway." Lesnik further stated "I anticipate the transfer to take place within the next two weeks…."

42. On June 14, 2019, one day after Jules requested a transfer, Delgado sent an email to OTG managers Kyle McGrath ("McGrath"), Lesnik, and Voska requesting that Jules' employment be terminated.

43. In mid-June 2019, Jules asked OTG HR management to schedule a meeting so that he could discuss Delgado's continued harassment. Jules was surprised to learn that a meeting including him, Delgado and Voska had already been scheduled for June 18, 2019.

44. In the June 18 meeting, Jules was asked to explain the workplace harassment. Jules explained how Delgado had been inappropriately touching him at work since August 2018.

45. Voska asked Delgado to draft a statement explaining alleged performance issues Delgado was having with Jules. Jules was stunned to see Delgado write a complaint about him since neither Delgado nor any OTG manager had ever spoken to him about performance issues.

46. McGrath entered the meeting at one point and asked Delgado what he was drafting. After Delgado explained that he was drafting a statement about Jules' performance, McGrath asked Delgado to step out of the room so that he could speak in private with Jules and Voska.

47. McGrath informed Jules that he had heard about Jules' sexual harassment allegations against Delgado. McGrath then stated that he had been waiting for Jules to come forward and speak directly to him about the allegations. Jules was astonished to hear McGrath say this as Jules had already made a complaint to Seabrook and spoken with Justin Evans as well.

48. McGrath then asked Jules to draft a statement containing the allegations.

49. The meeting concluded with Voska asking Jules to turn over his OTG-issued cellular phone and airport badge. Jules was then informed that he would be suspended while OTG completed its investigation into Delgado's performance-based allegations against him.

50. Upon information and belief, Delgado was not suspended.

51. On June 23, 2019, Jules received a call from Voska wherein Voska informed Jules that OTG was terminating his employment.

52. Upon information and belief, Delgado was not terminated.

53. Prior to the June 18, 2019 meeting, Delgado had neither spoken to Jules about his job performance nor reprimanded him in any way for alleged job performance issues. Although Delgado often lost his temper with Jules, it was usually in response to Jules' requests that Delgado stop touching him or when Jules asked Delgado to stop calling him about non-work subjects like baseball.

54. Jules never received an oral or written warning and was never subjected to any discipline prior to the June 18, 2019 suspension.

55. Jules enjoyed a good relationship with his colleagues throughout his entire tenure with OTG. At no point did any of Jules' colleagues complain to him about his performance.

56. Following his termination, Jules applied for unemployment insurance ("UI") benefits through the New York State Department of Labor ("DOL"). Jules received a call from a DOL representative informing him OTG was contesting his application for UI benefits, alleging he was not eligible for benefits since he had quit his position. Jules was given an opportunity to submit documents to the DOL in support of his claim that he was terminated.

57. Jules eventually received a call from the same DOL representative. Jules was informed the DOL's investigation found that he was in fact terminated and thus eligible for UI benefits.

58. Jules has suffered severe emotional distress as a result of Defendants' harassment and retaliation. Jules continues to suffer from insomnia and anxiety as a result of his traumatic tenure with OTG.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT OTG MANAGEMENT, LLC
### Sex-Based Discrimination in Violation of Title VII

59. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

60. By the acts and practices described above—including months of sexual harassment and retaliation culminating in unwarranted termination—Defendant OTG Management, LLC discriminated against Plaintiff in the terms and conditions of employment on the basis of sex, *inter alia*, by sexual harassment perpetrated by its agents, creating a hostile work environment and unlawfully terminating Plaintiff in violation of Title VII.

61. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile work environment. Plaintiff was repeated sexually harassed by his direct supervisor Delgado. Despite Plaintiff's lodging a formal complaint with Defendant's human resources department, Delgado was not disciplined. Delgado further abused his authority by threatening to terminate Jules if Jules complained about the sexual harassment or attempted to transfer to another site. Thus, Delgado conditioned Jules' employment on submission to sexual blackmail.

62. Defendant acted with malice and reckless indifference to Plaintiff's rights under Title VII.

63. As a result of Defendant's discrimination, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

### SECOND CAUSE OF ACTION AGAINST DEFENDANT OTG MANAGEMENT, LLC
### Retaliation in Violation of Title VII

64. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

65. By the acts and practices described above—including threats, harassment, and unwarranted disciplinary action—Defendant retaliated against Plaintiff for his opposition to unlawful discrimination under Title VII, in violation of that statute.

66. Defendant retaliated against Plaintiff by assigning him hazardous tasks following Plaintiff's complaint to OTG's human resources department about Delgado's conduct. Acting in accordance with Delgado's request to terminate Plaintiff, Defendant terminated Plaintiff's employment after Plaintiff submitted a written statement outlining Delgado's harassment.

67. Defendant acted with malice and reckless indifference to Plaintiff's rights under Title VII.

68. As a result of Defendant's retaliation, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT OTG MANAGEMENT, LLC
### Race and National Origin-Based Discrimination in Violation of Title VII

69. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

70. By the acts and practices described above—including racist images and terms used to describe Plaintiff in group-text messages to co-workers, as well as derogatory

remarks about Plaintiff's background and family—Defendant OTG Management, LLC discriminated against Plaintiff in the terms and conditions of employment on the basis of race and national origin through its agents, *inter alia*, by creating a hostile work environment.

71. Defendant acted with malice and reckless indifference to Plaintiff's rights under Title VII.

72. As a result of Defendant's discrimination, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Gender-Based Discrimination in Violation of New York City Human Rights Law § 8-107

73. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

74. By the acts and practices described above—including months of sexual harassment and retaliation culminating in unwarranted termination—Defendants discriminated against Plaintiff in the terms and conditions of employment on the basis of gender, *inter alia*, by sexual harassment, creating a hostile work environment and unlawfully terminating Plaintiff in violation of NYCHRL § 8-107.

75. The hostile work environment was severe and pervasive based on the nature of the harassment. Plaintiff was repeatedly sexually harassed by his director supervisor Delgado. Despite making a formal complaint with human resources, Delgado was not disciplined. Delgado further abused his authority by threatening to terminate Jules if Jules

15

complained about the sexual harassment or attempted to transfer to another site. Thus, Delgado conditioned Jules' employment on submission to sexual blackmail.

76. Defendants acted with malice and reckless indifference to Jules' protected rights under Section 8-107 and/or with conscious disregard of Jules' right to work in a workplace free of sexual harassment.

77. As a result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Retaliation in Violation of New York City Human Rights Law § 8-107(7)

78. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

79. By the acts and practices described above—including threats, harassment, and unwarranted discipline—Defendants retaliated against Plaintiff for his opposition to unlawful sexual harassment and gender discrimination in violation of § 8-107(7).

80. Defendants retaliated against Plaintiff by assigning him hazardous tasks following Plaintiff's complaint to OTG's human resources department about Delgado's conduct. Defendants terminated Plaintiff's employment after Plaintiff submitted a written statement outlining Delgado's harassment.

81. Defendants acted with malice and reckless indifference to Plaintiff's rights under § 8-107(7) and /or with conscious disregard for Jules' right to work in a workplace free of retaliation.

16

82. As a result of Defendants' retaliation, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### Race and National Origin-Based Discrimination in Violation of New York City Human Rights Law § 8-107

83. Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth herein.

84. By the acts and practices described above—including racist images and terms used to describe Plaintiff in group-text messages to co-workers, as well as derogatory remarks about Plaintiff's background and family—Defendants discriminated against Plaintiff by creating a hostile work environment in violation of NYCHRL § 8-107.

85. Defendants acted with malice and reckless indifference to Jules' protected rights under § 8-107 and/or with conscious disregard of Jules' right to work in a workplace free of race discrimination.

86. As a result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer emotional distress and other compensable damages unless and until this Court grants relief.

### JURY DEMAND

87. Plaintiff request a jury trial on all issues to be tried.

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) Declaring that by the acts and practices complained of herein, Defendants have violated Title VII and the NYCHRL;

(b) Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

(c) Directing Defendants to make Plaintiff whole with regard to all earnings he would have received but for Defendants' discriminatory and retaliatory treatment, including but not limited to, lost wages, pension, and other benefits;

(d) Directing Defendants to pay Plaintiff compensatory damages for his mental anguish, emotional distress, and humiliation;

(e) Awarding Plaintiff pre- and post-judgment interest;

(f) Awarding Plaintiff costs and reasonable attorneys' fees; and

(g) Granting Plaintiff such other and further relief as this Court deems necessary and proper.

Dated: Brooklyn, New York
July 18, 2021

                                                                                                                            _____
Udoka Odoemene
BROOKLYN LEGAL SERVICES
105 Court Street, 4th Floor
Brooklyn, NY 11201
P: 718-237-5500
F: 646-921-0422
uodoemene@LSNYC.org
*Attorneys for Plaintiff*